UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

UNITED STATES OF AMERICA

v.

CHONG LAM, *et al.*,

Defendants.

Action No. 3:07-CR-374

## MEMORANDUM OPINION

THIS MATTER is before the Court on the Government's Motion for Preliminary Order of Forfeiture (Doc. No. 332); the Government's Supplemental Motion for Restitution and Preliminary Order of Forfeiture (Doc. No. 374); and Defendants' Motion for Release Pending Appeal (Doc. No. 375). For the reasons stated below, Defendants' Motion for Release Pending Appeal is HEREBY DENIED and the Government's Motion for Preliminary Order of Forfeiture and Supplemental Motion for Restitution and Preliminary Order of Forfeiture are HEREBY DENIED WITHOUT PREJUDICE.

## I.    BACKGROUND

Defendants Chong Lam ("Lam") and Siu Yung Chan ("Chan") were the owners and officers of several companies that produced and imported non-infringing, infringing, and counterfeit luxury goods, including wallets and handbags, into the United States. Defendants used their companies to thwart port authorities' attempts to identify and confiscate counterfeit or infringing products. Lam and Chan employed Defendant Eric Yuen ("Yuen") in several of the companies.

1

Between 2002 and 2005, agents with United States Customs and Border Protection ("CBP") seized myriad containers of handbags and wallets imported from China. The items were imported into various ports throughout the United States. CBP agents seized Defendants' merchandise from ports in Houston, Texas; Newark, New Jersey; Los Angeles, California; New York, New York; and Norfolk, Virginia. After each seizure, CBP agents issued seizure notices to Defendants' companies informing them that CBP seized the goods because they potentially violated United States trademark laws.

A subsequent investigation revealed Defendants imported into the United States more than 300,000 handbags and wallets in the names of different companies, including Global Import, Inc.; Marco Leather Goods, Ltd.; Marco USA Inc.; The Perfect Impressions, Inc.; LY (USA), Inc.; CP (USA) Inc.; and Coco USA. Whenever CBP agents would identify one corporation as an importer of counterfeit goods, Defendants would continue to import goods into the same port, but under a different corporate name. If Defendants believed CBP agents could identify them as responsible for importing counterfeit goods, they would ship the goods to a different port.

A federal grand jury returned a seven-count Superseding Indictment against Defendants on March 26, 2009, charging them with one count of Conspiracy to Traffic in Counterfeit Goods, in violation of 18 U.S.C. § 371, four counts of Trafficking in Counterfeit Goods, in violation of 18 U.S.C. § 2320(a), and two counts of Smuggling Goods into the United States, in violation of 18 U.S.C. § 545.

After a seven-day trial, a jury acquitted Yuen, but convicted Lam and Chan of one

count of Conspiracy to Traffic in Counterfeit Goods, two counts of Trafficking in Counterfeit Goods, and two counts of Smuggling Goods into the United States. Defendants were convicted of counterfeiting a mark registered by Burberry Limited ("Burberry"), registration number 2,022,789, depicting a check pattern ("Burberry Check Mark"). Burberry also owns a registered mark, registration number 2,512,119, depicting an equestrian knight ("Burberry Knight Mark"), which was not charged in the Superseding Indictment. Burberry often uses the Knight Mark and Check Mark together on merchandise, but has not registered the two as a composite mark. Defendants' merchandise features a copyrighted mark consisting of a mounted knight integrated into a check pattern ("Marco Mark").

On January 7, 2011, this Court sentenced Lam to eleven months and twenty-five days on counts one, two, and five, and eighteen months on counts six and seven, all to be served concurrently. The Court sentenced Chan on the same day to five months imprisonment to be followed by five months of home confinement with electronic monitoring on each of counts one, two, five, six, and seven, all to be served concurrently.

## II.    APPLICABLE AUTHORITY

### a.    Forfeiture

Rule 32.2(b)(2) of the Federal Rules of Criminal Procedure authorizes a court to enter a preliminary order of forfeiture. Courts must determine if property is subject to forfeiture "[a]s soon as practical after a verdict or finding of guilty . . . on any count in an indictment or information regarding which criminal forfeiture is sought[.]" Fed. R. Crim. P. 32.2(b)(1)(A). The Court's forfeiture determination can be based on evidence in the record and new

evidence that is relevant and reliable. Fed. R. Crim. P. 32.2(b)(1)(B). If a court determines property is subject to forfeiture, "it must promptly enter a preliminary order of forfeiture setting forth the amount of any money judgment, directing the forfeiture of specific property, and directing the forfeiture of any substitute property if the Government has met the statutory criteria." Fed. R. Crim. P. 32.2(b)(2)(A).

Forfeiture is mandatory after the factual predicates have been met. United States v. Monsanto, 491 U.S. 600, 607 (1989) ("Congress could not have chosen stronger words to express its intent that forfeiture be mandatory in cases where the statute applied[.]").

Forfeiture can take the form of a money judgment or forfeiture of specific assets or substitute assets. United States v. Candelaria-Silva, 166 F.3d 19, 42 (1st Cir. 1999). If the Government seeks forfeiture of property, the court must determine if the Government established the appropriate nexus between the property and the offense. Fed. R. Crim. P. 32.2(b)(1)(A). If the Government seeks a monetary judgment, the court must determine how much the defendant is required to pay. Id. If proceeds or property subject to forfeiture are unavailable, the court must order the forfeiture of substitute assets up to the value of the unavailable assets. 21 U.S.C. § 853(p).

     b.  <u>Restitution</u>

The Mandatory Victims Restitution Act makes restitution in the full amount of the victim's loss mandatory for property offenses. 18 U.S.C. § 3663A(c)(1)(A)(ii). See also United States v. Leftwich, 628 F.3d 665, 668 (4th Cir. 2010). An order of restitution in a case involving crimes against property must require the defendant to (1) return the property to its

proper owner or (2) if returning the property is impossible, impracticable, or inadequate, pay the owner an amount equal to the greater of the value of the property on the date of damage, loss, or destruction, or the value of the property at the time of sentencing, less the value of any property returned. 18 U.S.C. § 3663A(b)(1). Further, the restitution order must require the defendant to reimburse the victims for "lost income . . . and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." 18 U.S.C. § 3663A(b)(4). The court must order restitution in the full amount of the victim's loss and may not consider the defendant's economic circumstances. 18 U.S.C. § 3664(f)(1)(A). The Government bears the burden of proving the restitution amount by a preponderance of the evidence. 18 U.S.C. § 3664(e).

     c.  <u>Release Pending Appeal</u>

Title 18 of the United States Code, section 3141(b), gives courts general authority to release a defendant pending the appeal of a conviction or sentence. A court should order that a defendant who has been convicted and sentenced to imprisonment and who has filed an appeal be detained unless the court finds

> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released . . .; and
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in--
>> (i) reversal,
>> (ii) an order for a new trial,
>> (iii) a sentence that does not include a term of imprisonment, or
>> (iv) a reduced sentence to a term of imprisonment less than the total of
> the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b)(1)(A)-(B). If the court makes these findings, the court should release the

defendant in accordance with 18 U.S.C. § 3142(b) or (c). 18 U.S.C. § 3143(b)(1). The defendant bears the burden of proving he or she is not a flight risk and will not pose a danger to the community. Fed. R. Crim. P. 46(c).

### III.    DISCUSSION

#### a.    Government's Motion for Preliminary Order of Forfeiture

The Superseding Indictment returned against Defendants contains a forfeiture notice requiring Defendants, if convicted of any offenses charged in counts one through seven, to forfeit any property constituting or derived from proceeds traceable to Defendants' violations; any property used or intended to be used to commit, facilitate, aid or abet the commission of the offenses; and any goods featuring counterfeit marks used in committing the offenses. The forfeiture notice states if property subject to forfeiture cannot be located, the Government will seek an order forfeiting substitute assets. Pursuant to the forfeiture notice, the Government requests that the Court enter a preliminary order of forfeiture for: (1) a money judgment in the amount of $ 12,032,732.00; (2) real property and improvements located at 52 East Centre Street, Suite 1, Nutley, New Jersey 07110 ("New Jersey warehouse"); and (3) various assets including bank accounts, vehicles, and real property.

Defendants urge the Court to deny the Motion for Preliminary Order of Forfeiture. Defendants contend forfeiture is not appropriate because the forfeiture amount is unreliable. Defendants argue the Government's item number theory – whereby the Government believes it can determine what a handbag or wallet looks like simply by looking at the item number – is erroneous because item numbers do not always correspond with one particular

type of merchandise. Nor do item numbers always correlate with the pattern on a bag or wallet. Instead, Defendants argue, item numbers can indicate the shape or size of merchandise and the same item number can be used for different types of merchandise. Thus, Defendants believe the Court cannot calculate a forfeiture amount based solely on item numbers alone.

The following is one of Defendants' many examples showing the unreliability of the Government's item number theory. Defendants contend the Government's assumption that all merchandise with item number 1616 is counterfeit is incorrect. Exhibit 1 of the Government's Sentencing Position shows a three-striped Marco bag as item number 1616. Item number 1616 in Defendant's Response, however, represents a four-striped bag. The bags are the same shape. Defendants state there are no allegations that the four-striped Marco tan plaid bag is counterfeit. The same mistake was made with item numbers 1707, 1806, 1807, and 1808. Defendants maintain handbags with these item numbers contain various patterns, but have a common shape. Defendants argue these examples are sufficient to show the error in the Government's methodology. Defendants also cite examples of errors with respect to trademarks owned by Chanel, Christian Dior, Prada, Louis Vuitton, Coach, Fendi, and Gucci, none of which Defendants were convicted of counterfeiting and none of which this Court found counterfeit by a preponderance of the evidence.

Because item numbers sometimes refer to the shape of the bag, not the pattern on it, Defendants conclude it is impossible for the Court to determine which merchandise can be included for forfeiture purposes. Similarly, it is impossible to determine proceeds of criminal

activity from shipping documents, sales documents, and invoices alone, as the only identifier in these documents is the item number.

### 1. *Forfeiture in the Form of a Money Judgment*

Forfeiture may take the form of a money judgment in an amount equal to that which the defendant obtained from the offense. United States v. Poulin, 690 F. Supp. 2d 415, 430 (E.D. Va. 2010) ("[b]ecause forfeiture is mandatory . . . the Government is entitled to the offense property . . . even when the gross proceeds obtained by the Defendant from such a criminal offense are no longer available."). The Government must prove the amount by a preponderance of the evidence. United States v. Cherry, 330 F.3d 658, 669 (4th Cir. 2003).

The Government requests a money judgment in the amount of $ 12,032,732.00, the amount of proceeds it believes traceable to Defendants' counterfeiting offenses. The Government submitted a Declaration from Anya Whitney, a Special Agent with the Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), declaring the forfeiture amount. Agent Whitney compiled a chart containing more than 2,600 items the Government has determined to be counterfeit. The Government believes the chart proves Defendants received approximately $ 12,032,732.00 in proceeds from the sale of counterfeit merchandise. See Gov't Ex. 1.

To determine the proceeds from the sale of counterfeit items, Agent Whitney prepared a spreadsheet containing more than 2,600 purportedly counterfeit items sold by Defendants. Gov't Ex. 1, Attach. A. Agent Whitney states Defendants' businesses used item numbers to identify goods. She retrieved information pertaining to the merchandise,

including item numbers, from paper documents seized in a search of Defendants' business premises, electronically stored on their servers and computers, and from records provided by Defendants' customers and CBP. Agent Whitney consulted with the registered trademark holders and allowed them to verify whether Defendants' items were counterfeit. She also relied on written opinions from CBP's Intellectual Properties Branch and impressions developed by the prosecution team to determine if the items were counterfeit.

After determining which items were counterfeit, Agent Whitney, along with representatives from the Department of Justice's Computer Crimes and Intellectual Property Section, Criminal Division, compared individual item numbers with data found on Defendants' hard drives and servers. The team multiplied the quantity for each item by the unit sales prices in Defendants' sales transactions database. For items that did not have a price, the team used the lowest unit price found in the records.

A jury convicted Defendants of counterfeiting Burberry's Check Pattern Mark. The Court determined at sentencing that none of the other marks submitted by the Government for relevant conduct and forfeiture purposes counterfeited registered marks. Consequently, the Government cannot obtain forfeiture of proceeds from the sale of merchandise bearing other marks. The Government concedes there are no proceeds from the sale of counterfeit merchandise, as the merchandise was seized before it could be sold. Accordingly, there are no proceeds to be forfeited and the Court DENIES the request for a money judgment.

### 2. *Forfeiture of Substitute Assets*

The court must order forfeiture of substitute assets if property subject to forfeiture:

A. cannot be located upon the exercise of due diligence;
B. has been transferred or sold to, or deposited with, a third party;
C. has been placed beyond the jurisdiction of the court;
D. has been substantially diminished in value; or
E. has been commingled with other property which cannot be divided without difficulty.

21 U.S.C. § 853(p). Defendants' assets may also be used as a substitute to satisfy a money judgment. See In re Billman, 915 F.2d 916, 920 (4th Cir. 1990) ("[a] forfeiture money judgment can be satisfied out of any of the defendant's assets."). To seize assets in partial satisfaction of a monetary judgment, the Government must show (1) statutory prerequisites are met; (2) the defendant has an interest in the property to be seized; and (3) the value of the substitute property does not exceed the amount of the money judgment. United States v. Poulin, 690 F. Supp. 2d 415, 431 (E.D. Va. 2010).

The Government asserts direct proceeds are unavailable for forfeiture. The Government submitted a Declaration from ICE Special Agent John Huang explaining tracing proceeds is not possible because (1) Defendants used money from the sale of counterfeit goods to pay business expenses and acquire additional inventory, and (2) proceeds from the sale of counterfeit goods were commingled with proceeds from the sale of legitimate goods. Gov't Ex. 2. Consequently, the Government believes it is entitled to forfeiture of the assets listed in its Memorandum. The Government argues Agent Huang's Declaration establishes Defendants have an interest in the property listed and assigns a value for each asset. Moreover, the value of the items the Government seeks to seize in partial satisfaction of the money judgment is only about forty percent of the amount to which the Government believes it is entitled.

As stated above, the Government cannot obtain a money judgment because there are no proceeds from the sale of counterfeit items. If the Government cannot obtain a money judgment, it follows that the Government cannot obtain forfeiture of substitute assets to partially satisfy the money judgment. Thus, forfeiture of substitute assets is inappropriate and the Court DENIES the Motion for Forfeiture with respect to substitute assets.

### b. Government's Supplemental Motion for Restitution and Forfeiture

#### i. *Preliminary Order of Forfeiture*

At the January 7, 2011, sentencing hearing, the Court excluded from the relevant conduct consideration all marks except the one on seized tan, Marco plaid handbags because the Court could not determine by a preponderance of the evidence that any of the other marks counterfeited registered marks. Transcript of Sentencing Hearing 81-84, January 7, 2011 (ECF No. 367.)  After this ruling, the Government conceded that there could be no forfeiture of proceeds, as the only mark adjudicated counterfeit for relevant conduct purposes was the one found on merchandise seized before Defendants could sell it. See id. at 128-29. Thus, there are no proceeds from the sale of counterfeit goods. The Government stated at sentencing, and reiterates in its Supplemental Motion, that the only forfeiture consideration remaining pertains to the New Jersey warehouse.

The Government argues the New Jersey warehouse is facilitating property. Specifically, the Government states Defendants stored counterfeit goods at the New Jersey warehouse after importing them into the United States. Agent Huang's Declaration indicates Defendants stored some of their merchandise in the New Jersey warehouse before

distributing it to consumers.

The Government has also submitted another Declaration by Agent Whitney stating Defendants shipped merchandise bearing the counterfeit check mark to the New Jersey warehouse. Gov't Attach. 2. The Government believes Agent Whitney's Declaration proves counterfeit merchandise was shipped to the New Jersey warehouse. Agent Whitney's Declaration states the packing list submitted as Government Attachment 2, Exhibit 1, which indicates goods listed in the document were delivered to the New Jersey warehouse, lists counterfeit handbags. Her justification is the list specifies certain quantities of merchandise in specific colors. Agent Whitney states Defendants manufactured counterfeit tan Burberry handbags with item numbers 7201 and 7202, which had an "N" suffix, indicating they contained black leather trim. Similarly, Agent Whitney claims, the packing list indicates item numbers 7201 and 7202 were manufactured with black leather trim, as there is a column for "blk-N." Thus, Agent Whitney concludes, the items on the packing list must be counterfeit.

Agent Whitney's Declaration also states the above-referenced packing list has a shipping container number – PONU 7194407 – which appears in the Department of Homeland Security's Automated Targeting System ("ATS") database as being used on several shipments of goods into the United States. Agent Whitney believes Government Attachment 2, Exhibit 2, an ATS document, correlates with the packing list because Rows 9 and 10 of the ATS document list "556 CTN" and "556 CTNS," indicating 556 is the carton count, and the third page of the packing sheet lists 556 as the box count. Agent Whitney states the second column of the ATS document lists the importer of these shipments as Ten

Ten Cherry Street Corp. Government Attachment 2, Exhibit 3 is a shipping document which Agent Whitney believes shows the items listed on the packing list were actually imported into the United States. Agent Whitney states Government Attachment 2, Exhibits 4 through 8 prove Defendants arranged a number of shipments using Ten Ten Cherry Street Corp. and that Defendant Lam was associated with Ten Ten Cherry Street Corp. Finally, Agent Whitney states Exhibits 5 and 6 prove Ten Ten Cherry Street Corp. was used to import counterfeit bags, as the Exhibits list item numbers identical to those Defendants used in connection with the counterfeit Burberry merchandise.

Defendants contend neither Agent Huang's nor Agent Whitney's statement proves the New Jersey warehouse was facilitating property. First, neither agent has ever claimed to actually see counterfeit merchandise in the New Jersey warehouse. Further, no one has provided either agent with photographs of counterfeit merchandise inside the New Jersey warehouse and no trial witness has alleged he or she saw counterfeit merchandise in the warehouse. In fact, Defendants point out, there has been no testimony whatsoever that counterfeit merchandise was stored in the New Jersey warehouse.

Moreover, Defendants point out, Agent Huang's Declaration does not state Defendants stored tan, three-striped, Marco plaid bags in the New Jersey warehouse. The Declaration simply says the New Jersey warehouse "served as a warehouse where the defendants stored some of the merchandise after it was imported from China and before it was distributed to customers or other places." Gov't Attach. 1.

Defendants argue Agent Whitney's Declaration also fails to establish that the tan,

three-striped Marco handbags were stored in the New Jersey warehouse. Agent Whitney's Declaration lists several item numbers she believes represent counterfeit Burberry handbags and wallets and states a packing list proves these item numbers were stored in the New Jersey warehouse. Defendants, however, argue the Government has failed to demonstrate the appropriate nexus between the item numbers and the mark the jury determined was counterfeit. Defendants assert Agent Whitney's theory as to the connection between counterfeit marks and item numbers is flawed for the same reasons established at the sentencing hearing. As they have done previously, defense counsel located several examples of instances in which the item numbers Agent Whitney lists as identifying counterfeit bags actually identify non-counterfeit merchandise.

Agent Whitney's Declaration states the following item numbers are connected with counterfeit merchandise: 7101; 7102; 1711; 7807; 7401; 7402; 7201; 1722; 1148; 1708; 1709; 1705; 1804; 7616; and 7806. Defendants' Response sets forth photographs of wallets connected with item numbers 7401 and 7402. Contrary to Agent Whitney's belief, Defendants' Response shows the items connected to these numbers feature a square "G" pattern, which has never been adjudicated counterfeit. Defendants further point out the Government stated in its sentencing position that item numbers 7401 and 7402 were counterfeits of a Gucci mark. <u>See</u> Government's Position with Respect to Defendant's Sentencing Factors Ex. 9B, p. 15, Oct. 23, 2010 (ECF No. 338-11). Yet the Government now claims these same item numbers are counterfeits of the Burberry mark.

Defendants provide several other examples of Agent Whitney's and the

14

Government's errors. Specifically, Agent Whitney asserts item numbers 7616, 7806, and 7807 are all item numbers for counterfeit Burberry merchandise. The Government's Sentencing Position, however, indicates these are item numbers for merchandise featuring the Square G mark. <u>See</u> Government's Position with Respect to Defendant's Sentencing Factors Ex. 9B, p. 16-18, Oct. 23, 2010 (ECF No. 338-11). Defendants also found evidence that item numbers 1804 and 1722, which the Government asserts are associated with counterfeit Burberry marks, can be associated with merchandise bearing other marks. <u>See</u> Def. Ex. 1 and 2. Defendants believe the errors they were fortunate enough to find prove the Government cannot establish by a preponderance of the evidence that tan, three-striped Marco handbags were ever shipped to or stored in the New Jersey warehouse. Thus, the Government has not established criminal transactions took place at the New Jersey warehouse or that contraband was stored there.

Defendants also raise issues pertaining to the information available regarding the shipment to Ten Ten Cherry Street Corp. in Philadelphia, Pennsylvania. Defendants argue the Government has provided absolutely no information establishing the owner of Ten Ten Cherry Street Corp. Further, there is no evidence that Defendants arranged shipments using this entity. Defendants believe the Government has shown, at best, that Defendants have some relationship with the New Jersey warehouse and a single shipping document from Shunlida Handbag Company, Ltd. to Ten Ten Cherry Street Corp. says "deliver to" the New Jersey warehouse. Defendants maintain this does not explain which items were delivered or whether all items in the shipment went to the New Jersey warehouse. Defendants maintain

the Government's reading one address on one packing list does not justify forfeiture of the address on the packing list. Thus, this information cannot be used to justify forfeiture of the New Jersey warehouse.

"Facilitating property" is property that makes an offense easier to commit or harder to detect. United States v. Schifferli, 895 F.2d 987, 990 (4th Cir. 1990). The Fourth Circuit uses the "substantial connection" test to determine if property is facilitating property. United States v. Herder, 594 F.3d 352, 364 (4th Cir. 2010). "Under the 'substantial connection' test, where the government's theory is that the property was used to commit, or to facilitate the commission of, the offense of conviction, the government must establish that there was a substantial connection between the property to be forfeited and the offense." Id. The Government asserts the New Jersey warehouse is both a substitute asset for the money judgment and facilitating property, as Defendants stored counterfeit goods in the warehouse.

A court may order forfeiture of any facilitating property used in connection with a trademark counterfeiting offense. 18 U.S.C. § 2323(a)(1)(B). It is "[i]rrelevant whether the property's role in the crime is integral, essential or indispensable." United States v. Schifferli, 895 F.2d 987, 990 (4th Cir. 1990). A single incident of facilitating criminal activity is sufficient to trigger forfeiture. United States v. Santoro, 866 F.2d 1538, 1542 (4th Cir. 1989). The Government must establish by a preponderance of the evidence that property is subject to forfeiture. United States v. Herder, 594 F.3d 352, 364 (4th Cir. 2010).

Defendants have shown the Government's item number theory is simply too unreliable to use in a forfeiture analysis. There is no reliable method of determining exactly

which pattern appears on merchandise simply by looking at item numbers alone. Defendants point out just a few examples of the Government claiming one item number represents two different marks. This indicates to the Court that the merchandise the Government claims was shipped to the New Jersey warehouse may not bear counterfeit marks. The Court cannot determine, sight unseen, whether the item numbers in Agent Whitney's Declaration are associated with a counterfeit mark. The Government has not met the burden of showing a substantial connection between the New Jersey warehouse and Defendants' criminal activity. Consequently, the Court finds the Government has not proven the New Jersey warehouse was facilitating property and the Supplemental Motion for Preliminary Order of Forfeiture is DENIED.

ii. *Restitution*

The alleged victims in this case are Louis Vuitton and Burberry. The Government initially sought restitution in the amount of $ 131,250.00 for Louis Vuitton and $ 260,919.47 for Burberry. The jury convicted Defendants of counterfeiting the Burberry Check Mark Pattern. The Court determined at sentencing that only the seized tan, three-striped, Marco handbags could be considered for relevant conduct and forfeiture purposes. See Transcript of Sentencing Hearing 81, Jan. 7, 2011 (ECF No. 367). District courts may order a defendant to pay restitution only for "losses traceable to the illegal activity." United States v. Posnanski, No. 99-4519, 2000 U.S. App. LEXIS 16970, at *7 (4th Cir. July 17, 2000). It follows, then, that the only victim owed restitution is Burberry.

The Court ordered the Government at Defendants' sentencing hearing to obtain

additional information regarding the restitution purportedly owed. The Government now submits an e-mail from Melissa Roth, Intellectual Property Counsel for Burberry. In her e-mail, Ms. Roth states Burberry has spent at least $ 186,646.83 in attorneys' fees in connection with the civil action the corporation brought against Defendants. The consent judgment in that action required Defendants to reimburse Burberry $ 100,000 for legal fees. Burberry has not, however, recovered the additional $ 86,646.83 in legal fees related to the civil action or the $ 19,217.12 in legal fees incurred in connection with the criminal action proceeding before this Court. Further, Burberry has spent at least $ 25,968.73 in investigatory fees in an attempt to combat Defendants' importing, distributing, and selling counterfeit Burberry merchandise. All together, Burberry believes it is entitled to restitution in the amount of $ 131,832.68 as compensation for losses incurred and damages suffered as a result of Defendants' counterfeiting activities.

The Government concedes Burberry is not entitled to restitution for legal fees incurred, as legal fees are generally considered consequential damages and are not eligible for inclusion in a restitution order in a criminal case. See United States v. Okun, 3:08-CR-132, 2009 WL 2365979, at *4-5 (E.D. Va. July 31, 2009). The Government maintains, however, the company is entitled to restitution in the amount of $ 25,968.73, which represents the investigatory fees incurred.

Defendants argue neither legal nor investigatory fees are the proper subject of restitution. With respect to the investigatory fees, Defendants state Burberry has not submitted a summary of tasks for which the investigatory fees were incurred or to whom the

18

fees were paid. Moreover, Defendants argue, the Mandatory Victim Restitution Act requires that restitution expenses be reasonable and necessary, but this Court cannot determine if the fees were reasonable and necessary under the circumstances. See 18 U.S.C. § 3663A(b)(4). Defendants argue the Government has submitted no more evidence than it had at sentencing. Defendants conclude that without more information about the purpose of the investigation, who requested it, and what was done, the Court lacks sufficient information to determine whether the investigatory fees are reasonable.

Consequential damages such as attorneys' fees may not be included in a restitution judgment. See United States v. Sprouse, 58 Fed. Appx. 985, 989-90 (4th Cir. 2003) (quoting United States v. Mullins, 971 F.2d 1138, 1147 (4th Cir. 1992)). Thus, the Court does not consider any of Burberry's legal fees a loss for restitution purposes.

The Government has not proven Burberry's investigatory fees by a preponderance of the evidence. Evidence submitted in support of a request for restitution "must provide a factual basis for the restitution amount . . . and may not rely on hypothesis, conjecture, or speculation alone." United States v. Mejia, 326 Fed. Appx. 710, 712 (4th Cir. 2009) (internal citations and quotation marks omitted). The Mandatory Victims Restitution Act does not require the victim of a crime "to keep contemporaneous records of the expenses incurred as a result of aiding in the investigation and prosecution of the offense." Posnanski, 2000 U.S. App. LEXIS 16970, at *9. While meticulous records are not required, the Government has not submitted enough information to show Burberry is entitled to restitution for investigatory fees. The Government submits nothing more than an e-mail from Burberry's

counsel claiming entitlement to investigatory fees. The Court has no way of determining when or to whom the investigatory fees were paid. Nor can the Court determine the purpose for which the fees were paid. Thus, the Government has not provided evidence or information sufficient to permit this Court to require Defendants to pay restitution and the Motion for Restitution is DENIED.

### c.  Defendants' Motion for Release Pending Appeal

#### i.  *Clear & Convincing Evidence Defendants will not Flee or Pose Danger*

Defendants contend they have shown over the past three years they are not flight risks or dangers to the community. Defendants have been supervised by the United States Pretrial Services Agency in the Eastern District of New York for several years and have not had any notable misdeeds. Further, both Defendants appeared at sentencing when they knew the Government was requesting that the Court immediately impose a sentence of more than ten years. Finally, Defendants point out the Court has heard considerable evidence about their desire to remain in the United States and continue the life they have built here with their children. Defendants believe the evidence demonstrates they have no desire to leave the United States. The Government concedes Defendants have satisfied their burden with respect to this prong of the analysis.

Because Defendants have surrendered their passports, expressed a strong desire to remain in the United States despite their legal troubles, and have never shown any propensity for violence or dangerousness, the Court finds Defendants have met the burden of proving they are not flight risks and do not pose a threat to the community.

Defendants maintain their appeals raise substantial questions of law and fact which, if successful, are likely to result in reversal or an order for a new trial. A "substantial question" is "'a 'close' question or one that very well could be decided the other way.'" United States v. Steinhorn, 927 F.2d 195, 196 (4th Cir. 1991) (quoting United States v. Giancola, 754 F.2d 898, 901 (11th Cir. 1985)). Defendants argue their issues on appeal easily meet the "substantial question" test and set out for the Court's consideration issues they believe will likely result in reversal or an order for a new trial.

Defendants state there is a substantial question as to whether the term "substantially indistinguishable" in the criminal trademark infringement statute, 18 U.S.C. § 2320, is unconstitutionally vague. Defendants will urge the Court of Appeals for the Fourth Circuit to rule on the issue and believe reversal will be required if the Fourth Circuit agrees with them. The next issue Defendants will raise on appeal is whether this Court should have given a jury instruction on the definition of substantially indistinguishable. They believe if the Fourth Circuit agrees with them, a new trial will be required to correct this error. Finally, Defendants will appeal the Court's denial of their Motion under Rules 29 and 33 of the Federal Rules of Criminal Procedure. Defendants believe there are close questions regarding the Motion that could result in a new trial.

The Government maintains the fact that Defendants have argued the issues they intend to raise on appeal extensively before this Court is not sufficient to show they are likely to prevail on appeal. Thus, the Government believes Defendants' Motion is conclusory

and they have failed to carry their burden.

Defendants do little more than state that there are "close" questions with respect to the issues they intend to raise on appeal. Thus, Defendants have not satisfied the requirements for showing their appeal raises substantial questions of law or fact likely to result in reversal; a new trial; a sentence that does not include imprisonment; or a reduced sentence that would result in less time than the total Defendants would have served by the time the appeal is resolved. Consequently, Defendants have not satisfied both requirements for release pending appeal and the Motion is DENIED.

## IV.  CONCLUSION

Because the Government has not satisfied the burden upon it with respect to either a preliminary order of forfeiture or restitution, the Government's Motions are both DENIED WITHOUT PREJUDICE. Having failed to prove they are entitled to release pending appeal, Defendants' Motion is DENIED.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order shall issue.

_____ /s/ _____
James R. Spencer
Chief United States District Judge

ENTERED this __28th___ day of March 2011